**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHEN HENDERSON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 4:12-CV-730 CAS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on federal prisoner Stephen Henderson's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence ("Motion to Vacate"). The government filed a response and movant filed a traverse. An evidentiary hearing was held in this matter on November 10, 2015, at which time both sides were allowed to present evidence. For the following reasons, movant's Motion to Vacate is denied.

### I. Background

On February 14, 2008, Tracy Shelton was arrested with 124 grams of cocaine. Following his arrest, he began cooperating with the Drug Enforcement Administration ("DEA") . Mr. Shelton told agents that movant was the source of his cocaine, and thereafter agents began surveillance on movant. On February 20, 2009, agents set up a meeting between Mr. Shelton and movant. Movant drove Mr. Shelton, who was wearing a recording device, and while they were stopped at a gas station, agents placed a GPS tracker on movant's truck.

On March 5, 2008, Mr. Shelton told agents, on short notice, that movant wanted to meet at his mother's house on Milan Avenue in University City to do an exchange. Prior to the meeting, agents were unable to outfit Mr. Shelton with a recorder or search the residence. Mr. Shelton and

movant spoke outside the residence for 30 minutes.  Movant left and went to a house at 11128 Bon Jour Court.  While movant was gone, agents outfitted Mr. Shelton with a recorder.  Movant returned to the house on Milan with a black bag, which he gave to Mr. Shelton.  After movant left, contrary to the agents' instructions, Mr. Shelton walked into the Milan residence with the bag.  He took some cocaine from the bag and placed it inside a drop ceiling.  He then exited the house and gave the agents a black bag with approximately five kilograms of cocaine.

Very early in the morning on March 6, 2008, Mr. Shelton called the agents and told them that he had taken some of the cocaine and placed it in the ceiling of the Milan house.  Later that morning the agents met with Mr. Shelton at the house on Milan and retrieved approximately five kilograms of cocaine.  Later that day, the agents applied for and received a search warrant for 11128 Bon Jour Court.

 On March 10, 2008, agents went to arrest movant at 7301 Sieloff Drive in Hazelwood. Agents waited at least four hours outside the apartment complex before movant emerged.  The agents approached movant and cuffed him.  One agent read movant his <u>Miranda</u> rights from a card. The agents did not have a search warrant for 7301 Sieloff.  The agents told movant that they were investigating him and asked if they could go inside to talk.  Movant consented and the agents removed the keys from his pocket and entered the residence.

An agent filled out a consent to search form, and movant signed it.  While movant was being questioned at 7301 Sieloff, an agent overheard movant state that there was money in a closet, and even more money at 11128 Bon Jour Court.  Agents seized $256,575.00 in cash from the hall closet at 7301Sieloff.  The search at Sieloff was completed within 20-30 minutes.

The agents drove movant to the DEA division office while other officers executed the search warrant at 11128 Bon Jour Court.  At Bon Jour Court, the agents seized $948,080.00 in cash, a Rolex and two Cartier watches, and a number of financial documents.

At the division office, movant was interrogated for over two hours.  An agent read movant his rights from a card.  Movant was cooperative and during the interview he identified Julius Turrentine as the source of his cocaine.  Movant made a recorded telephone call to Mr. Turrentine, and a number of other calls at the agents' request.  Later movant wore a recording device and went to Mr. Turrentine's residence to collect a money counter.  Movant was not detained at the division office that day, and he was allowed to leave.

On March 11, 2008, agents had arranged to meet movant in the morning and follow him to the division office.  Instead of driving to the division office, movant drove to the law office of N. Scott Rosenblum, and the agents followed.  Attorney Rosenblum spoke with movant and an agent inside his office.

On March 12, 2008, the government filed a criminal complaint against Mr. Turrentine, who was later arrested.  On March 20, 2008, a grand jury sitting in the Eastern District of Missouri issued an indictment against movant and Mr. Turrentine.  Movant was charged in Count I with conspiracy to distribute and possess with intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. §§ 841 and 846.  Movant was charged in Count II with distribution of in excess of five kilograms of cocaine in violation of 21 U.S.C. §§ 841 and 846.  Movant was also charged in Count IV with criminal forfeiture in violation of 21 U.S.C. § 853.

A warrant was issued for movant's arrest on March 20, 2008. Movant surrendered himself on March 24, 2008.  Movant was brought before a United States Magistrate Judge on March 24,

2008.  Attorneys Gilbert C. Sison and N. Scott Rosenblum entered their appearances on movant's behalf.  Movant pleaded not guilty at his arraignment.

On May 6, 2008, Mr. Rosenblum filed a Motion to Suppress Statements and Physical Evidence.  He also filed a Motion for Disclosure of Confidential Informants, Informers and Cooperating Individuals.  On May 20, 2008, the matter came before the Honorable Audrey G. Fleissig, who was at the time a United States Magistrate Judge.[1] Movant appeared with counsel, and after being advised of the right to file motions and to have an evidentiary hearing, he knowingly and voluntarily waived his right to file or proceed on pretrial motions and to an evidentiary hearing. Movant orally moved to withdraw his two pretrial motions.

On August 13, 2008, the government filed a civil forfeiture case against the money and jewelry seized at 11128 Bon Jour Court and 7301 Sieloff Drive, Case Number 4:08-CV-1180. Attorney Sison entered his appearance in that case and filed a "Verified Claim to Property" on movant's behalf.  In the Verified Claim to Property, which movant signed under oath, movant asserted that he was the owner of the money and jewelry seized at 11128 Bon Jour Court and 7301 Sieloff Drive.  Mr. Sison also filed and answer in the civil forfeiture case.

On August 28, 2008, the grand jury returned a superceding indictment, which added no new charges against movant.  Movant pleaded not guilty to the superceding indictment.  Movant filed a Motion to Suppress Statements and a Motion to Suppress Physical Evidence. On October 14, 2008, Magistrate Judge Fleissig held an evidentiary hearing.  Mr. Sison represented movant at the evidentiary hearing.  At the hearing, the government presented the testimony agent Task Force

---

[1]The Honorable Audrey G. Fleissig has since been appointed United States District Judge for the Eastern District of Missouri.

Officer Jason Staats.  Defendant presented the testimony of James Hayes, a forensic document examiner, who testified regarding the signature on the consent to search form, and of attorney Rosenblum. In rebuttal, the government presented the testimony of Special Agent Lonnie Parrish.

On November 12, 2008,  Magistrate Judge Fleissig issued a Report and Recommendation, in which she recommended that movant's pretrial motions be denied.  On December 8, 2008, movant filed objections to the Magistrate Judge's Report and Recommendation.  The undersigned carefully reviewed the objections and adopted the Report and Recommendation on December 17, 2008.  The Court overruled the objections and denied movant's motion to suppress statements and physical evidence.

On November 20, 2008, attorneys Rosenblum and Sison moved to withdraw as counsel for movant.  As grounds for withdrawal, they stated that movant had informed counsel that he wished to advance a defense at trial that would make them necessary witnesses.  Moreover, said counsel stated that "[movant] has steadfastly refused to take the undersigned's counsel on a variety of matters. [Movant] has furthermore leveled certain allegations claiming that the undersigned undermined his case. As such, the undersigned believes that the attorney-client relationship has broken down and that Defendant will best be served by the entry of new counsel on his behalf." United States v. Henderson, 4:08-CR-187 CAS, Doc. 121 at 2-3.

Movant's counsel also filed a motion for psychiatric evaluation and continuance of the trial date. Movant's counsel represented in their motion that movant displayed a troubling lack of understanding during conference they had with him.  Id., Doc. 126 at 2-3. On December 4, 2008, Magistrate Judge Fleissig ordered movant to undergo a mental examination, and that a report be prepared pursuant to 18 U.S.C. § 4247(b) and (c).

On February 10, 2009, movant's attorney filed a report from John S. Rabun, M.D., in which the doctor stated that movant declined to participate in a psychiatric evaluation.  Movant later consented to an evaluation, and on February 24, 2009, movant's counsel filed a report in which Dr. Rabun opined that movant was not afflicted by a mental disease or defect.  He found that movant had the capacity to understand the nature and consequences of the proceedings against him and to assist properly in his defense.  On February 27, 2009, following a hearing at which movant and his counsel were present, Magistrate Judge Fleissig found movant competent to stand trial.

On March 17, 2009, the undersigned held a closed hearing on attorneys Rosenblum and Sison's motion to withdraw as counsel.  Movant was present at the hearing.  After considering the statements by counsel and movant, the Court denied the motion to withdraw as counsel.

On March 23, 2009, the government filed a motion for inquiry into a potentital conflict of interest as to attorneys Rosenblum and Sison.  The government requested that the Court conduct an inquiry as to whether Mr. Rosenblum or Gilbert Sison had a conflict of interest that would preclude them from raising the defense that movant never made admissions to the law enforcement officers. Defense counsel responded to the motion indicating that they had similar concerns.  On April 7, 2009, the Court held a hearing on the matter.  The Court granted attorneys Rosenblum and Sison leave to withdraw.  Attorney Susan Roach entered an appearance on movant's behalf in both the criminal and civil forfeiture cases on April 6, 2009, which was two and half months before trial.

On June 16, 2009, the government filed a Criminal Information alleging that movant had two prior Missouri state convictions: (1) a 1989 conviction for Possession of a Controlled Substance; and (2) a 1993 conviction for Sale of Controlled Substance. United States v. Henderson, 4:08-CR-187 CAS, Doc. 178. The Criminal Information alleged that due to the prior convictions and the

quantity of cocaine charged in the indictment, the applicable penalty range would be a mandatory life sentence without release pursuant to 21 U.S.C. § 841(b)(1)(A). The government also filed notice of its intent to use the prior convictions as Rule 404(b) evidence, as well as movant's previous conspiracy with Mr. Shelton to distribute marijuana. Attorney Roach made no pre-trial objections to the proffered Rule 404(b) evidence, but she did object to the admission of this evidence at trial.

The trial by jury began on June 29, 2009. At trial the government presented eleven witnesses including: two alleged co-conspirators, Tracy Shelton and Clayton Moore; two lab chemists, Anthony Harris and Charlotte Corbett; three case agents, John Christiansen, Jason Staat, and Parrish; and four supporting agents, Scott Marlow, Leo Rice, Jessie Durer, and James Stroop. Movant presented the testimony of three witnesses: Albert Winston, Marcia Freeman-Carter, and Sherondia Elliot. Movant did not testify. The handwriting expert also did not testify.

Mr. Shelton testified, without objection, that he was selling 25 pounds marijuana with movant in 2003. Trial Transcript, Vol. II at 8-9. Mr. Shelton further testified that the marijuana business "didn't do good," and so they started selling cocaine in the early part of 2007. Id. Mr. Shelton testified that he cooperated with the agents to gather information against movant, and he did this in hopes of gaining leniency. Id. at 20-24. Mr. Shelton authenticated a February 25, 2008 recording of him, movant, and Clayton Moore "counting money." Id. at 25.

Clayton Moore testified that back when he was 19 or 20 years old he obtained powdered cocaine from movant. Trial Transcript, Vol. III at 9. Attorney Roach objected "as to relevance" to this line of questioning, an objection which the Court sustained. Id. at 10. Mr. Moore testified that Mr. Shelton, movant, and he were all involved in selling cocaine beginning in 2007. Id. at 14-15. Mr. Moore testified that when movant and Mr. Shelton would come to his house at 9262 Sundown,

he and Mr. Shelton would count money, and movant would leave with the money. Id. at 17-18. Mr. Moore testified that the government's recording from February 25, 2008, was an accurate recording of him and Mr. Shelton counting money in movant's presence. Id. at 21 and 33.

Agent Staat testified at trial, without objection, that after movant's arrest movant was read his Miranda rights on the street.  Movant then agreed to go inside the apartment on Sieloff. Trial Transcript, Vol. II at 112,115-116, 117. Agent Staat testified that while in the apartment, agent Watson presented a consent to search form to movant for signature, which movant signed.  Id. at 114-115. Agent Staat testified that while at Sieloff, movant told agents that there was between $250,000.00-$300,000.00 cash in the closet, and approximately $920,000.00 in cash at the house on Bon Jour.  Id. at 116 and 121. The agent testified that the money was seized from the closet at Sieloff, which later counted, totaled $256,575.00. Id. at 116.

Agent Parrish testified at trial that at the division office he read movant his rights from a Miranda card.  Trial Transcript, Vol. III at 49.  Agent Parrish also testified that movant told him that all of the money seized from Sieloff and Bon Jour was owed to Mr. Turrentine for cocaine. Id. at 50.  Agent Parrish further testified at trial that movant explained to him how Mr. Turrentine would obtain and then distribute cocaine to him and others. Id. at 51-52.

The government sought to introduce Exhibit 33, a copy of the Verified Claim to Property signed by movant.  Attorney Roach objected stating, "Well, I guess the first basis is that they were to provide a list of exhibits which they were going to use in their case. This wasn't on the exhibit list, No. 1. And No. 2, it's –" Id. at 108. Attorney Roach further stated, "And he's not charged with – this is not the forfeiture case. This is about – you know, this is to show in the forfeiture proceeding" and that movant signed the document, "reliant upon prior counsel for reasons

unbeknownst to me given the implications." Id. at 108-109. The District Court overruled the objections and thereafter Exhibit 33 was admitted into evidence. Later, attorney Roach made a motion for mistrial based on the admission of Exhibit 33, the Verified Claim to Property, stating, "you are forcing him to testify against himself." Id. at 167. The motion was denied.

The government also sought to introduce evidence of movant's prior 1993 sale conviction under Rule 404(b). Id. at 110-111. Attorney Roach made a motion to exclude the conviction as "remote in time" and not within the purview of 404(b). Id. at 111. The Court overruled the oral motion, and the 1993 conviction was admitted over attorney Roach's objection.

After the government rested, movant called Albert Winston and Marcia Freeman-Carter to testify about movant's property renovations business and their real estate dealings with movant. Id. at 150 and 156. These two witnesses were called in an attempt to establish there was a source of income to explain the money that was seized by agents. The defense also called Ms. Elliot to testify. Id. at 167-168.  Ms. Elliot testified that she had been dating movant for over one year, did not know Mr. Shelton or Mr. Moore, and had not observed movant to be in the drug trade. Id. 171-172.

After Ms. Elliot's testimony, attorney Roach requested a recess to "consult with my client overnight" due to the admission of the Verified Claim to Property. Id. at 178. Attorney Roach stated, "I never anticipated that he would be compelled to testify against himself." Id. 179. The Court denied counsel's  request and attorney Roach requested another mistrial, "for not giving me an opportunity to consult with him" which was also denied. Id. at 179-180. Thereafter, movant rested without testifying and without calling any additional witnesses.

After a four-day trial, movant was found guilty as to Counts I and II of the indictment. Movant's counsel filed a Motion for Acquittal or in the Alternative Motion for New Trial Pursuant to Rule 29(C) and Rule 33 of the Federal Rules of Criminal Procedure, which the Court denied.

Following trial, the Court prepared to initiate the criminal forfeiture proceedings before the jury. Movant, however, waived those proceedings.

Movant appeared before the undersigned for sentencing on September 22, 2009. The Court sentenced movant to a term of imprisonment of life, the mandatory minimum, on Counts I and II, all terms to be served concurrently.

Counsel filed a timely notice of appeal, which was submitted to the Eighth Circuit Court of Appeals. Attorney Richard Sindel entered his appearance replacing Ms. Roach as movant's counsel. On July 30, 2010, the Eighth Circuit Court of Appeals affirmed the judgment of the district court based on the record of the district court and the parties' briefs. United States v. Henderson, 613 F.3d 1177 (8th Cir. 2010), specifically finding that probable cause existed for movant's arrest; any objection to admission of physical evidence was waived; admission of Henderson's prior conviction was harmless error; the limiting of defense counsel's questioning at trial did not prejudice movant; the district court's failure to ask movant to affirm or deny his prior convictions was harmless error; and exclusion of previous trial counsel's testimony at trial did not require reversal.

Movant filed a petition for hearing en banc and a petition for certiorari with the United States Supreme Court, both of which were denied on April 25, 2011.

In the § 2255 motion presently before the Court, movant asserts seven grounds for relief:

Ground One: movant's counsel rendered ineffective assistance during the plea negotiations in failing to advise movant to plead guilty to a sentence less than life;

10

Ground Two: movant's counsel rendered ineffective assistance in drafting and advising him to execute a "Verified Claim to Property in Forfeiture Complaint," wherein movant signed under penalty of perjury that he was in possession and the owner of currency and jewelry seized by the agents in the accompanying forfeiture case;

Ground Three: movant's counsel rendered ineffective assistance in failing to raise and litigate the meritorious issue that his statements should have been suppressed because he was not presented to a neutral, independent magistrate to determine probable cause for his arrest;

Ground Four: movant's counsel rendered ineffective assistance in failing to fully investigate his case by reviewing all applicable discovery and in failing to be prepared to litigate the case;

Ground Five: movant's counsel rendered ineffective assistance in failing to plead, litigate, and preserve movant's meritorious motions to suppress evidence, including issues related to his lack of consent to the search of the Sieloff residence, the improper use of GPS monitoring, and failure to present him to a neutral magistrate to determine if there was probable cause of his arrest;

Ground Six: movant's counsel rendered ineffective assistance in failing to adequately litigate the exclusion of improper character evidence at trial, including evidence concerning movant's previous conviction for sale of controlled substance and an agent's testimony concerning movant's "attitude" and knowledge of "the way the system works";

Ground Seven: movant's counsel rendered ineffective assistance cumulatively.

On November 10, 2015, the undersigned heard testimony and arguments regarding Ground Two. Attorneys Roach and Sison testified at the hearing. Movant did not take the stand to testify.

## II.  Legal Standard

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To warrant relief under § 2255, the errors of which movant complains must amount to a fundamental miscarriage of justice. Davis v. United States, 417 U.S. 333 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). The

11

Supreme Court has stated that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

### III.  Discussion

In each of his seven grounds for relief, movant has claimed he received ineffective assistance of counsel.  To prevail on an ineffective assistance of counsel claim, movant must show that his counsel's performance was deficient, and that he was prejudiced by the deficient performance. See McReynolds v. Kemna, 208 F.3d 721, 722 (8th Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  "Counsel's performance was deficient if it fell outside the wide range of professionally competent assistance."  McReynolds, 208 F.3d at 723 (internal quotations and citations omitted).  Prejudice is shown if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial.  Id.

### A.    Ground One

In Ground One movant argues his counsel was ineffective in that counsel failed to advise movant to plead guilty to a sentence less than life.  On November 6, 2015, movant filed a document with the Court stating that he was waiving this claim.  Ground One is, therefore, moot.

### B.    Ground Two

In Ground Two movant asserts that his counsel, Mr. Sison, rendered ineffective assistance in drafting and advising movant to execute in the civil forfeiture case a "Verified Claim to Property in Forfeiture Complaint," wherein movant signed under penalty of perjury that he was the owner of the seized currency and jewelry. In his Motion to Vacate movant argues that filing a claim to the

property in the civil forfeiture action was a mistake amounting to ineffective assistance of counsel because ownership of the money became an issue at trial and the Verified Claim to Property was used as evidence against him.

According to movant, large amounts of cash is often indicative of a drug operation, and movant's ability to deny ownership of the cash was hindered by the Verified Claim to Property. At trial movant's counsel, Ms. Roach, attempted to present an alterative explanation for the large amounts of cash. She highlighted that the Bon Jour house was a property movant was remodeling, and others had access to the residence. She also argued that a number of people had access to the closet at Sieloff. This theory, that the money belonged to someone else, however, was undermined by the Verified Claim to Property, which was used against movant as evidence that he had previously claimed ownership to the cash. In his Motion to Vacate and memorandum in support, movant argues it was constitutionally defective representation for his attorney to have allowed him sign the Verified Claim to Property because it was used as evidence against him at trial, and it was foreseeable that the evidence would be used against him.

Federal agents seized the cash at the Bon Jour house and the Sieloff apartment as money used in drug transactions. Under federal law money used in drug trafficking is subject to forfeiture. 21 U.S.C. § 881(a)(6). "In a forfeiture proceeding, the government bears the initial burden of proving probable cause to connect the property involved in the forfeiture proceeding to some form of criminal wrongdoing." United States v. Ninety One Thousand Nine Hundred Sixty Dollars, 897 F.2d 1457, 1462 (8th Cir. 1990) (citing 21 U.S.C. § 881(d) (1982); 19 U.S.C. § 1615 (1982 & Supp. II 1984); and United States v. Thirteen Thousand Dollars in United States Currency, 733 F.2d 581, 584 (8th Cir.1984)). Once the government meets its burden of establishing probable cause, "the

13

burden shifts to the claimant to demonstrate by a preponderance of the evidence that the property is not subject to forfeiture, or that a defense to forfeiture applies." One Blue 1977 AMC Jeep CJ–5 v. United States, 783 F.2d 759, 761 (8th Cir. 1986).

Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions sets the procedures governing in rem forfeiture actions in federal court, including forfeitures of money used in drug trafficking. Supplemental Rule G(l) ("This rule governs a forfeiture action in rem arising from a federal statute."). See also United States v. Ford 250 Pickup, 980 F.2d 1242, 1243 (8th Cir.1992) (in forfeiture proceedings brought under 21 U.S.C. § 881, the Supplemental Rules must be followed). Under Rule G, a person asserting an interest in a property subject to civil forfeiture must file a claim with the court where the forfeiture action is pending.   Fed. R. Civ. P. Supp. R. G(5)(a)(i).  The claim must identify the claimant and state the claimant's interest in the property.  Id.  It must also be signed under penalty of perjury.  Id.  A claimant must also file an answer to the forfeiture complaint.  Fed. R. Civ. P. Supp. R. G(5)(b). A claimant's answer may be stricken if it is not preceded with a verified claim.  United States v. Three Parcels of Real Property, 43 F.3d 388, 391 (8th Cir.1994); United States v. Beechcraft Queen Airplane, 789 F.2d 627, 630 (8th Cir. 1986).   If a claimant does not file a verification or an answer, his or her interest in the property is waived, and the property may be subject to default judgment. United States v. United States Currency Totaling $3,817.49, 826 F.2d 785, 787 (8th Cir.1987).

In filing a verification or answer in a civil forfeiture, a claimant may invoke the Fifth Amendment privilege against self incrimination. The decision to invoke the Fifth Amendment privilege, however, does not decrease a claimant's burden of establishing a claim, and the government may move to strike the claim and for the entry of default judgment.  United States v.

14

One Hundred Fifty-Four Thousand Eight Hundred Fifty-Three Dollars, 744 F.3d 559, 564 (8th Cir. 2014) (citing with approval  United States v. One Hundred Forty-Eight Thousand Eight Hundred Forty Dollars, 521 F.3d 1268, 1273–74 (10th Cir. 2008)).

According to movant's attorney Gilbert Sison, who testified at the evidentiary hearing, the parties were in the middle of plea negotiations at the time the civil forfeiture action was filed.  Mr. Sison testified that movant insisted that they assert a claim to the money that was subject to forfeiture in order to preserve movant's claim to the money. Doc. 31, Hearing Trans., p. 38, 43-4.  Mr. Sison testified that movant informed him that the money legitimately belonged to movant.  Id. at 37, 43-4.  He told Mr. Sison that the money was insurance proceeds from the death of his son and money he earned from renovating houses.  Id. at 32.  Mr. Sison questioned movant about the source of the money, and he did some investigating on the Internet as to the veracity of these claims.  He learned that movant indeed had a son who died.  Id.  at 32, 46-7.  Mr. Sison then prepared and filed the Verified Claim to Property, which movant signed, and the answer to the forfeiture complaint.

At the evidentiary hearing, attorney Susan Roach testified that when she took over as movant's defense counsel two months before trial, it was her opinion that the Verified Claim to Property presented a large obstacle for the defense. Doc. 31 at 5. In an affidavit attached to the government's response, Ms. Roach attests that she spoke with movant on a number occasions about the verification, and movant continued to insist that much of the money was legitimate.  Doc. 13, Ex.3 at 4.  See also Evidentiary Hearing Trans., Doc. 31 at 16. She stated that she spent hours investigating movant's claimed sources for the money, and she did not find any support for his claims.  Id.  Ms. Roach stated in her affidavit that she counseled movant to rescind the forfeiture

verification because it was very incriminating as he had no reasonable explanation as to a legitimate source of the money, but movant refused to do so.  Doc. 13, Ex.3 at 4.

Movant did not testify at the evidentiary hearing.  He did attached to his traverse an affidavit in which he states that he did not direct Mr. Sison or Mr. Rosenblum to draft or file the Verified Claim to Property, but rather Mr. Sison suggested he sign the verification "so that the property could be used as part of the plea negotiations." Doc. 18, Ex. 1.  Movant also attests that Ms. Roach "did not discuss the Asset Forfeiture Affidavit with me at any time." Id.

Movant carries the burden of establishing the factual basis for his claim for relief, and the Court does not find movant's affidavit to be credible.  Movant's affidavit directly contradicts the live testimony and affidavits of Mr. Sison and Ms. Roach.  Mr. Sison and Ms. Roach both provided the Court with details regarding the context and content of their conversations with movant. Furthermore, their testimony was consistent with their actions during the pretrial proceedings and trial.  What is more, Mr. Sison and Ms. Roach are both officers of the Court and thereby have more motivation to be truthful.  The Court finds it more likely than not that movant told Mr. Sison that the money subject to forfeiture was his; that the source of the money was legitimate, which Mr. Sison believed; and he wanted to assert a claim to the money and personal property.  Had Mr. Sison not filed the Verified Claim to Proper and answer, he would have gone against movant's express wishes, and his client would have forever lost his right to assert a claim to the money and property.

The Court finds that movant's counsel performance with regard to the forfeiture verification was not "outside the wide range of professionally competent assistance."  McReynolds, 208 F.3d at 723. See also Burkhalter v. United States, 203 F.3d 1096, 1098 (8th Cir. 2000).  Movant has cited

16

no case law with comparable facts, and the Court has found none.  The Court declines to find that counsel's performance was constitutionally deficient when he filed a claim to the money and property in the civil forfeiture action, which was done at his client's express direction.[2]  Movant willingly assumed the burden of demonstrating, in the civil forfeiture case and at trial, that the money and jewelry in his possession were obtained by lawful means.  While this strategy proved to be imprudent because movant did not have the records to back up his claim to the money and property, and the Verified Claim to Property was used against him a trial, movant's counsel's actions do not rise to the level of constitutionally deficient assistance of counsel.  An attorney is not incompetent in exercising reasonable professional judgment even when, in hindsight, the decision may have been a mistake.  Brown v. United States, 656 F.2d 361, 363 (8th Cir. 1981).  The claim in Ground Two is denied without merit.

### C.    Ground Three

In Ground Three movant argues that his counsel was ineffective when he failed to move to suppress statements that movant made on March 10, 2008, on the grounds that movant was not

---

[2]Although it is not expressly raised in his Motion to Vacate, memorandum in support, or traverse, movant's counsel implied at the evidentiary hearing that Ms. Sison was constitutionally ineffective for failing to investigate the legitimacy of movant's claims to the money prior to filing the verification and answer.  Mr. Sison, however, testified that movant was adamant that the money was his, and he offered two explanations as to its source – that it was insurance proceeds from the death of his son, and he earned the money renovating houses.  If indeed movant is raising this argument, he is essentially arguing that his counsel was ineffective for failing to investigate his own representations – although movant never expressly states that they were untrue or without basis.  Under controlling case law, it was not unreasonable for Mr. Sison to have accepted movant's statements. Burkhalter v. United States, 203 F.3d 1096, 1098 (8th Cir. 2000); See Strickland, 466 U.S. at 691 ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."); Lingar v. Bowersox, 176 F.3d 453, 461 (8th Cir. 1999).

timely presented to a neutral magistrate to determine probable cause for his arrest.  Movant argues that had the issue been raised, his statements would have been suppressed and the results of the trial would have been different.[3]

The Fourth Amendment requires "a prompt judicial determination of probable cause as a prerequisite to an extended restraint on liberty following an arrest without a warrant." Webster v. Gibson, 913 F.2d 510, 513 (8th Cir. 1990) (citing Gerstein v. Pugh, 420 U.S. 103 (1975)).  An arrestee has a constitutional right to a prompt determination of probable cause by "a neutral and detached magistrate [so that he not be solely] judged by the officer engaged in the often competitive enterprise of ferreting out crime." Gerstein, 420 U.S. at 114.  The Supreme Court has held that, "absent evidence of ill will or unreasonable justifications for delay, a judicial probable cause determination is generally prompt for purposes of the Fourth Amendment if it occurs within forty-eight hours after arrest or detention. Where a defendant does not receive a probable cause determination within forty-eight hours, the burden shifts to the government to justify the delay." United States v. Kirkland, 567 F.3d 316, 319 (7th Cir.  2009) (citing County of Riverside v. McLaughlin, 500 U.S. 44, 57 (1991)).

The Federal Rules of Criminal Procedure and federal statute specifically address the proper time frame for presentment for persons arrested on a federal charge.  Rule 5(a) of the Federal Rules of Criminal Procedure provides that "a person making an arrest within the United Sates must take

---

[3]Mr. Sison did move to suppress movant's statements but on other grounds.  Mr. Sison stated in his affidavit that at the time he believed there was merit to the arguments that movant did not consent to the search at Sieloff, that movant was not properly advised of his constitutional rights, and that movant was coerced into making statements to the arresting officers, who made promises of leniency. The Court ultimately denied movant's motions to suppress, finding movant had consented to the search and that he made statements to law enforcement voluntarily.

the defendant without unnecessary delay before a magistrate judge . . ." Fed. R. Crim. P. 5(a)(1)(A).

Under the judicial doctrine commonly known as the McNabb-Mallory rule, a doctrine based in

common law not the Constitution, "confessions made during periods of detention that violate [Rule

5(a)'s] prompt presentment requirement" are "generally render[ed] inadmissible." Corley v. United

States, 556 U.S. 303, 309 (2009) (quotation omitted). See also Mallory v. United States, 354 U.S.

449 (1957); McNabb v. United States, 318 U.S. 332 (1943).  In 1968 Congress enacted 18 U.S.C.

§ 3501(c), which "limits the McNabb-Mallory rule by providing that a confession 'shall not be

inadmissible solely because of delay in bringing [the defendant] before a magistrate judge' if the

confession was voluntary and was made 'within six hours immediately following' the defendant's

arrest or detention."[4]  United States v. Casillas, 792 F.3d 929, 930 (8th Cir. 2015) (quoting Corley,

556 U.S. at 309).  "If the confession occurred before presentment and beyond six hours, however,

---

[4]Section 3501(c) of Title 18 states:

In any criminal prosecution by the United States or by the District of Columbia, a
confession made or given by a person who is a defendant therein, while such person
was under arrest or other detention in the custody of any law-enforcement officer or
law-enforcement agency, shall not be inadmissible solely because of delay in
bringing such person before a magistrate judge or other officer empowered to
commit persons charged with offenses against the laws of the United States ... if such
confession is found by the trial judge to have been made voluntarily and if the weight
to be given the confession is left to the jury and if such confession was made or given
by such person within six hours immediately following his arrest or other detention:
Provided, That the time limitation contained in this subsection shall not apply in any
case in which the delay in bringing such person before such magistrate judge or other
officer beyond such six-hour period is found by the trial judge to be reasonable
considering the means of transportation and the distance to be traveled to the nearest
available such magistrate judge or other officer.

18 U.S.C. § 3501(c).

the court must decide whether delaying that long was unreasonable or unnecessary under the McNabb–Mallory cases, and if it was, the confession is to be suppressed." Corley 556 U.S. at 322.

Movant argues that he is entitled to relief because his counsel failed to move to suppress inculpatory statements he made following his arrest on March 10, 2008, on the grounds that he was not timely presented to a neutral magistrate. Movant, however, has not adequately shown that any such motion would have been granted. In his memorandum in support of his Motion to Vacate, movant asserts that following his arrest he was detained for "over two hours," but he provides no evidence as to how long he was in custody. Movant asserts that he made numerous inculpatory statements while in custody that were used against him at trial, including general statements as to how his cocaine business worked and that he had given Mr. Shelton 10 kilograms of cocaine, but he does not specifically state when these statements were made following his arrest. Doc. 2 at 17-8.

Movant bears the burden of demonstrating that his counsel's performance was constitutionally defective, and movant has not provided the Court with sufficient information to evaluate his claim. See McReynolds v. Kemna, 208 F.3d 721, 722 (8th Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Without evidentiary support, such as movant's affidavit detailing what occurred following his arrest, what specific statements he made that were used against him, and when these statements were made, the Court cannot apply Strickland's standards. Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) (requiring an "affirmative showing of what the . . . evidence or testimony would have been"). See also United States v. Goodman, 590 F.2d 705, 711 (8th Cir. 1979) (holding that conclusory allegations unsupported by specific facts may be summarily dismissed).

20

What is more, movant is mistaken as to the applicable law.  Without referring to 18 U.S.C. § 3501(c), he argues that "[e]ven two hours of detention can constitute an extended restraint on liberty" and, therefore, his statements would have been excluded.  Doc. 18 at 6 (citing to United States v. Davis, 174 F.3d 941, 944 (8th Cir. 1999)). As the Supreme Court explains in Corley, under 18 U.S.C. § 3501(c), a district court faced with a motion to suppress must determine whether the defendant confessed within six hours of arrest, not two, and if the confession came within the six hour window, "it is admissible . . . so long as it was 'made voluntarily and . . . the weight to be given [it] is left to the jury.'" Corley, 556 U.S. at 323 (quoting § 3501(c)) .  It has already been determined that the statements movant made following his arrest were voluntary, United States v. Henderson, 2008 WL 5274441, *7-8 (E.D. Mo. Nov. 12, 2008), and movant has presented no evidence showing that the inculpatory statements that were used against him at trial were made more than six hours after his arrest.

Finally, movant does not explain how the suppression of any such statements would have changed the outcome of the trial. In his Motion to Vacate and supporting memoranda, movant summarily states a number of times that the outcome of the trial would have been different had his inculpatory statements not been used against him, but he provides absolutely no analysis in support of this assertion.

Based on the record before it, the Court finds that movant has not demonstrated that his counsel was constitutionally defective for failing to move to suppress evidence based on the argument that movant was not promptly presented to a neutral magistrate.[5]  Movant has not shown

---

[5]Mr. Sison states in his affidavit that he did not move to suppress the statements movant made to law enforcement on the ground that movant was not timely presented to a neutral magistrate because he did not think the argument had merit. Mr. Sison points to the fact that following his

that any such motion would have been granted, or specifically how the outcome of his trial would have been different. The claim is denied without merit.

### D.   Ground Four

In Ground Four, movant faults his trial counsel for failing to review all the applicable discovery in the case. Movant also asserts that his counsel was unprepared to go to trial. In support of Ground Four, movant points to a number of statements his counsel made at trial, and the fact that she filed three motions to continue the trial date.

In opposition to movant's Motion to Vacate, the government filed a response opposition, to which it attached Ms. Roach's affidavit. In the affidavit, Ms. Roach attests to the following with regard to her trial preparation:

> I had very lengthy visits with [movant] at the jail, vigorously reviewed all reports, CDs, transcripts of hearings, and contacted witnesses in order to bolster at least some favorable remnants of his various accounts as to the allegations against him. I confirmed that I had not received the entirety of the discovery in early May when I requested and received additional discovery from AUSA Becker, inclusive of numerous CDs. I then promptly assigned my associate, Chris Elster, to review everything; summarize for me, and then spend three days at the jail playing the CDs for [movant] until the task was completed. At the time, due to the enormity of the

---

arrest, movant cooperated with law enforcement, and in fact, he was released. According to Mr. Sison, "It appeared that [movant] was not arrested, but was in fact voluntarily cooperating with law enforcement after they had contacted him at the Sieloff residence on March 10, 2008. Indeed, [movant] was not incarcerated after that contact with law enforcement as he visited with Mr. Rosenblum the very next day to obtain the firm's service. Furthermore, we voluntarily surrendered [movant] and obtained a bond when charges were formally filed against him." Doc. 13, Ex. 4 at 2. In its response, the government asserts, without citing legal authority, that "[t]o the extent . . . [movant]'s cooperation extended past six hours, he was not in custody and was working with law enforcement." The Court need not decide whether movant's cooperation and subsequent release suspended the application of 18 U.S.C. § 3501(c) and the McNabb-Mallory rule because there is no evidence that movant made statements that were used against him at trial outside the six hour window and, moreover, movant has not adequately demonstrated how the outcome of his trial would have been different had the statements he made been suppressed.

task paired with [movant]'s inconsistent and often improbable accounts as to the evidence against him, I requested a continuance of the June trial.  After Elster had reviewed all CD's with [movant] I followed up with [movant] as to explanations he had given Elster as to the same.

Doc. 13, Ex. 3 at 3.

The trial in this case last lasted four days, and movant has cherry-picked five moments from the trial transcript, which he contends demonstrate that attorney Roach was unprepared for trial:

- During Agent Christiansen's testimony about the February 25, 2008 recording, Ms. Roach stated to the District Court at sidebar, "Not that I recall any money was counted at Sundown, not in the discovery that I received." Trial Transcript, Vol. I at 180.

- During Shelton's testimony when the February 25, 2008 surveillance tape was played, Ms. Roach stated, "Well, I haven't seen any of the tapes – any of these tapes that were played here today, were you – was [movant] transferring drugs to you?"  Trial Transcript, Vol. II at 42.

- During Shelton's testimony, Ms. Roach told the Court at sidebar, "Well, I've never heard anything about [Henderson telling Shelton to 'take the case']."  Id. at 53.

- During Shelton's testimony relative to counterfeit money, Roach stated at sidebar, "That first came up in [the prosecution]'s opening statement, and I was kind of taken aback. And I read back through all these reports until like three in the morning, and learned that there's never been any mention of any of this counterfeit stuff."  Id.

- During Agent Stroop's testimony, Ms. Roach objected stating "he's going to give an opinion, a financial opinion of an expert. And I've not received a summary of his testimony." Trial Transcript, Vol. III at 116-7.

Movant merely points to these instances when Ms. Roach states that she had not reviewed a tape, or that she was surprised by the elicited testimony, but movant does not connect the dots and explain what Ms. Roach should have done differently, or how being more prepared in these instances would have changed the outcome of the trial. The Court has carefully reviewed the trial

23

transcripts and finds these five instances do not establish that Ms. Roach performance was constitutionally deficient or that movant was prejudiced as a result.

For example, movant asserts that his counsel was ineffective because she did not remember that there was evidence of money counting on recording that was made at Mr. Moore's residence. Ms. Roach objected to the recording on relevance, but her objection was overruled. Movant does nothing to explain how this minor lapse in memory hindered his defense, as the tape would have been admitted in any event.

As for the second example movant gives, the Court has carefully reviewed the transcript and believes Ms. Roach merely misspoke.  During Mr. Shelton's cross-examination, Ms. Roach was attempting to make the point that Mr. Shelton was never wearing a wire during an actual transfer of drugs.  "So basically what we have for this jury is no occasion where you were wearing a wire and you contend that drugs were transferred from [movant] to you, correct?"  Trial Transcript, Vol. II at 42. It is evident from this statements and the trial transcript that Ms. Roach saw the recordings – they were played in the courtroom.  In the Court's view, Ms. Roach intended to say,  "Well, I haven't seen any [drugs on] the tapes – any [on] these tapes that were played here today, were you – was [movant] transferring drugs to you?"  Mr. Shelton responded by admitted this fact.  Id.

With regard to movant's third and forth examples, these are statements Ms. Roach made during a sidebar conference that took place during Mr. Shelton's testimony. Ms. Roach was making the point that she had not seen the statements to which Mr. Shelton was testifying, and she moved that the government produce any such statements. The government responded that it had not produced the statements to the defense.  The government's attorney elaborated that under Rule 26, it did not have a duty to do so, because Mr. Shelton's statements regarding movant's threat and

24

counterfeiting were not made to law enforcement. Trial Transcript, Vol. II at 53-5. Movant's third and forth examples are not evidence that Ms. Roach did not review discovery or that she was unprepared for trial. She did not have the statements because they were not given to her by the government.

Finally, movant faults Ms. Roach for stating that she had not seen an expert report from agent Stroop. However, there is no evidence in the record that there ever was such a report, which was exactly Ms. Roach's point. She objected to agent Stroop giving opinion testimony because he had never been designated as an expert, and she had never received an expert report from him. The Court overruled Ms. Roach's objection, but it was not entirely without basis, as agent Stroop was about to offer his opinion about the financial records.

In sum, none of the examples movant gives from the transcript establish that Ms. Roach "failed to exercise reasonable diligence and skill" at trial, or that movant was prejudiced thereby. Burkhalter v. United States, 203 F.3d 1096, 1097 (8th Cir. 2000).

In addition, movant's five examples do not impeach or undermine Ms. Roach's affidavit. Ms. Roach never stated that she reviewed all the documents in this case, and it was not ineffective assistance of counsel for her not to have done so. Ms. Roach states in her affidavit that she assigned the task of reviewing the additional discovery the government provided to her associate, and her associate gave her a summary. Ms. Roach then reviewed some of the evidence with movant. Attorneys often rely on colleagues and associates, and movant has cited no authority for the supposition that it is constitutionally deficient performance to delegate some tasks to an associate. But even if the Court were to assume that Ms. Roach's conduct with regard to the discovery was

insufficient, movant has not shown how the outcome of the trial could have been different had she been familiar with each and every document in the case.

In support of his contention that Ms. Roach did not review all the discovery in this case, movant also points to three motions to continue the trial. In one motion, filed May 28, 2009, Ms. Roach stated that she "only recently made arrangements with defense counsel Rosenblum for receipt of <u>notes</u> pertinent to Defendant's case (but is not yet in receipt thereof)" and that she had "not yet completed review of tapes and transcripts <u>with</u> <u>Defendant.</u>" Doc. 18, Ex. 10 (emphasis added). This motion was filed a month prior to trial, and in this motion Ms. Roach does not state that she had not reviewed the discovery, but rather she had not received "notes" from Mr. Rosenblum, and she had not had the opportunity to go over the discovery with movant. In a second motion for a trial continuance, Ms. Roach stated on June 15, 2009, that there were additional discovery materials, including two audio tapes, that she had not yet received from the AUSA, and she needed additional time to review them. Doc. 18, Ex. 11. The second motion was denied on June 16, 2009, and defense counsel had 13 remaining days to prepare for trial. In her affidavit Ms. Roach explained what she did to prepare for trial after she received the additional discovery materials, as discussed above. In the third motion for a continuance, filed the morning of trial, movant's counsel stated that she had just received discovery from the government, and "defendant has not had the opportunity to inspect said documents in order to ascertain whether or not defendant contends that said documents are authentic and defendant has not had the opportunity for forensic review of the same by accountants, financial or handwriting experts." <u>United States v. Henderson</u>, 4:08-CR-187 CAS, Doc. 196. As for the third motion, which was made on the day of trial, Ms. Roach complained that she was unprepared for trial because the government had just given her additional discovery that she needed

26

to investigate.  In other words, the motion is not evidence of Ms. Roach's incompetence, but rather the government's delay, and movant's counsel filed a motion with the Court to address the situation, but it was denied.  This is hardly evidence of constitutionally deficient performance by movant's counsel.  Despite movant's assertion to the contrary, the three motions for a trial continuance do not establish that Ms. Roach was unprepared for trial or that she had not reviewed all the applicable discovery prior to the trial date.

In his memorandum in support, movant further faults his counsel in Ground Four for not being prepared to object to Exhibit 33, the Verified Claim to Property.  Movant contents that "[Ms.] Roach should have been aware of Exhibit 33 and failed to make any pre-trial objections to the evidence, including that it was signed based on the erroneous and ineffective advice of counsel."  Doc. 3 at 21.  Ms. Roach was very much aware of the verification, and she believed that it was very damaging to movant's case.  She attempted to have the exhibit excluded at trial on the grounds that it was not disclosed on the government's exhibit list.  But the Court overruled Ms. Roach's objection, finding that movant was aware of the exhibit because he himself had signed it.  Ms. Roach further objected to the admission of the exhibit arguing that movant had detrimentally relied on the erroneous advice of counsel when he signing the verification. Trial Transcript, Vol. III at 108-109.  Again, her objection was overruled.  Movant faults Ms. Roach for failing to make any pre-trial objections to the evidence.  But even if Ms. Roach had made a pretrial object, there is no indication that any such motion would have been granted.  Movant has not explained why a pretrial motion would have been any more successful than the objections Ms. Roach made at trial.

In his memorandum in support, movant also faults Ms. Roach's trial performance because "Roach elicited[ ]comment on [movant]'s right not to testify, and failed to have it stricken or request

27

a mistrial." Doc. 3 at 19.  Movant gives two examples of this from the trial transcript.  During the cross examination of Agent Staat regarding the Miranda waiver, the following colloquy occurred:

> Roach:  You just didn't use [a Miranda form]?
>
> Staat:  At the time he was being very cooperative. He was – I mean, he was read his rights in front of nine other individuals plus himself that would testify to that, and he was being cooperative.

Trial Transcript, Vol. II at 136.

Later, the following exchange took place:

> Roach:  So you contend that this $250,000 belonged to Mr. Henderson. Why would he leave the residence, not knowing that you are out there, leave that amount of money in a closet that a teenager or one of his lady friends could discover once they do something as simple as open the closet and hang up their coats?
>
> Staat:  You'd have to ask him that.

Trial Transcript, Vol. II at 141.

Even if one were to characterize this testimony as comments about movant's "right not to testify," the comments were obscure and hardly pivotal in all the evidence that was presented at trial. Had Ms. Roach asked for a mistrial based on this testimony it would have been denied.  United States v. Sherman, 440 F.3d 982, 987 (8th Cir. 2006) ("Exposure of a jury to improper testimony ordinarily is cured by measures less drastic than a mistrial, such as an instruction to the jury to disregard the testimony.").  And had she requested an instruction directing the jury to disregard the comments – assuming the Court would have granted such a motion – there is no indication whatsoever the outcome of the proceedings would have been different.

Movant cannot show that Ms. Roach's performance was deficient in preparing for trial, or that the outcome of the trial would have been different has she been better prepared.  Movant is not entitled to flawless legal representation, but rather reasonably effective assistance "under prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 687. Furthermore, the Court's scrutiny of counsel performance must be "highly deferential," and "choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 689-91. The Court finds movant's performance was more than reasonable under the circumstances.  Movant's claims in Ground Four are without merit.

### E.  Ground Five

In Ground Five movant contends that his attorney rendered ineffective assistance of counsel by failing to plead, litigate, and preserve movant's meritorious motions to suppress evidence, including issues related to his lack of consent to the search of the Sieloff residence, the improper use of GPS monitoring, and failure to present him to a magistrate to determine probable cause of his arrest. Movant raises no meritorious claim for relief in Ground Five.

#### 1.  Sieloff Search

In his pre-trial motion to suppress, Mr. Sison made the argument that movant did not consent to the search at the Sieloff residence, and he did not sign the consent to search form.  At the evidentiary hearing, movant's counsel presented the testimony of James Hayes, a forensic document examiner, who testified regarding the signature on the consent to search form.  Mr. Hayes's opinion was inconclusive.  He testified that after comparing the signature on the consent to search form with 47 exemplars of the movant's signature, which were provide by the defense, it was his conclusion that the author of the exemplars could neither be identified or eliminated as the author of the

signature on the consent form.  In his Motion to Vacate, movant faults his attorney, Mr. Sison, for failing to lay a proper foundation for the exemplars.  Movant argues that had his attorney laid the proper foundation, the decision of the Magistrate Judge would have been different, and she would have recommended that the evidence seized from Sieloff be suppressed.  The Court does not agree.

In Judge Fleissig's Report and Recommendation it is true that she faults movant's counsel for not laying the proper foundation for the exemplars.  She wrote, "[o]ther than the signatures contained on defendant's bond, which was presumably signed in open court, no foundation, whatsoever, was laid for the exemplars Mr. Hayes used for compar[ing the consent to search form]." Henderson, 2008 WL 5274441, *3 (E.D. Mo. Nov. 12, 2008) (internal citations omitted).  But Judge Fleissig goes on to write, "[e]ven if one assumes, however, that all of the exemplars . . . were signed by [movant], the only opinion Mr. Hayes could offer was that, based upon his examination, he could not identify or eliminate [movant] as the author of the signature on the consent to search form."  Id. In other words, Mr. Hayes's opinion was inconclusive.  Therefore, even if Mr. Sison has laid the proper foundation, the result would have been the same.

Movant's argument that Ms. Roach was ineffective for failing to call Mr. Hayes as a witness at trial or "another document examiner" is also without merit.   Mr. Hayes could neither conclude that movant signed the consent to search, nor could he exclude movant as the signer of the document.  Calling Mr. Hayes, whose opinion was inconclusive, to testify at trial would not have aided movant's defense.  Furthermore, in her affidavit Mr. Roach states that she did not call Mr. Hayes to testify because movant had told her that he may have signed the form, and she was also concerned that Mr. Hayes would be asked about the authenticity of the signature on the forfeiture affidavit.  Therefore, the decision not to call Mr. Hayes as a witness was a matter of "trial strategy," which is "virtually unchallengeable." United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005)

(internal marks and cited cases omitted).  As for calling another document examiner, movant has not demonstrated that a different document examiner would have reached a more definitive or favorable conclusion – and in fact, it is possible that any such expert may have concluded that movant indeed did sign the consent to search form.  Movant's argument in Ground Five regarding the consent to search at the Sieloff resident is without merit.

### 2.   GPS Monitoring

In February 2008, federal agents planted a "homing device" or GPS monitor on movant's truck without a warrant.  Placement of a GPS monitor on a vehicle without a warrant constitutes an improper search and seizure under the Fourth Amendment. United States v. Jones, 132 S.Ct. 945 (2012).  Movant claims his attorneys were constitutionally ineffective for failing to file a motion to suppress on this basis.

Movant's claim of ineffective assistance of counsel fails because he faults his counsel for failing to raise an objection based on a Supreme Court case that had not yet been decided.  Movant claims his counsel was ineffective for not objecting under United States v. Jones, 132 S.Ct 945 (2012).  The Jones case, however, was not even decided until more than three years after movant was tried.  An attorney is not ineffective for failing to object based on a case that had not yet been decided.  Anderson v. United States, 393 F. 3d 749 (8th Cir. 2005). The Eighth Circuit has specifically held that in cases prior to Jones, counsel is not ineffective for failing to move to suppress evidence obtained from GPS monitor placed without a warrant.  Freeman v. United States, 611 Fed. Appx. 886, 887-8 (8th Cir. 2015).  Accordingly, movant's argument in Ground Five regarding suppression of the GPS evidence is without merit.

### 3.      Timely Presentment

Movant also argues in Ground Five that his counsel was ineffective for failing to move to suppress the evidence law enforcement obtained following movant's arrest, on the grounds that movant was not timely presented to a neutral magistrate to determine probable cause.  There is nothing to indicate that any such motion would have been granted. For the reasons stated above in Ground Three, movant's claim is without merit.

### E.      Ground Six

In Ground Six, movant contends his counsel, Ms. Roach, rendered ineffective assistance in failing to adequately litigate the exclusion of improper character evidence at trial, including evidence concerning movant's previous conviction for sale of controlled substance and an agent's testimony concerning movant's "attitude" and knowledge of "the way the system works."  The Court has reviewed these claims and finds they are without merit.

#### 1.    Prior conviction from 1993

Approximately two weeks before trial, the government file its notice of intent to offer evidence pursuant to Federal Rule of Evidence 404(b).  The notice stated that the government intended to offer evidence of movant's prior drug convictions to prove movant's intent, preparation, plan, knowledge, and absence of mistake in voluntarily joining the charged conspiracy.  At trial, the government elected only to submit evidence of one of movant's prior convictions from 1993.  Ms. Roach objected and argued the evidence should be excluded, as it was "remote in time and not properly within the purview of 404(b)." Trial Transcript, Vol. III at 111. The undersigned overruled the objection.  Id. Movant raised the issue on appeal, and the Eighth Circuit found that the admission of the 1993 conviction was more prejudicial than probative, but that the admission was harmless error.  The appellate court found that the evidence against movant was "considerable" and his 1993

conviction was "merely cumulative of other evidence establishing [his] knowledge and intent to participate in the conspiracy. Henderson, 613 F.3d at 1183. Nevertheless, in his Motion to Vacate movant argues that "had [his] counsel objected either pre-trial or with the proper standard and case law during trial, it is likely that the district court would have sustained the objection" and "[h]ad counsel properly objected, the jury would not have received evidence that Henderson was a prior convicted felon for a similar crime," and the result of the trial would have been different. Doc. 3 at 27. Movant's argument is nonsensical and not supported by the record. First, movant's counsel did object to the evidence, and movant does nothing to explain how a pretrial motion would have made any difference, or why her argument at trial was improper. Second, the Eighth Circuit has already determined that the admission of this evidence was harmless, meaning movant did not suffer prejudice and the outcome of the trial would not have been different had the evidence not been admitted. Movant's argument is entirely without merit.

### 2.    Comments regarding marijuana and prior cocaine dealings

At trial Tracy Shelton testified that he started selling marijuana with movant in 2003, at least three years prior to the time charged in the indictment. Mr. Shelton further testified that the marijuana business did not do well, and that he and movant began selling cocaine in 2007. Movant's attorney did not object to this testimony. Clayton Moore also testified that sometime in 2007 he was aware that Mr. Shelton and movant were selling marijuana. Ms. Roach objected as to the foundation of this questioning, which was sustained. The Court limited the testimony to personal knowledge. Mr. Moore then testified that sometime in 2007, Mr. Shelton came to him and told him that he and movant were now dealing in cocaine. Mr. Moore also testified that he had known movant since sixth grade and that as a "youngster" he would get "small, very small quantities" of powered cocaine from movant. Ms. Roach objected to the relevance of this, and the Court sustained the objection.

33

In his Motion to Vacate movant faults his trial counsel for not objecting to evidence of prior drug dealings. He argues that she should have objected on the grounds that the evidence was improper character evidence that was more prejudicial than probative. United States v. Mejia-Uribe, 75 F.3d 395 (8th Cir. 1996).

First, movant cannot show that had his counsel moved to exclude evidence of movant's prior dealing, especially those more recent in time, any such motion would have been granted. The Eighth Circuit has held that evidence of other drug transactions is relevant. United States v. Washington, 318 F.3d 845, 859 (8th Cir. 2003) (citing United States v. Brown, 956 F.2d 782, 787 (8th Cir. 1992) ("evidence of other drug transactions is relevant to demonstrate that the defendant knowingly and intentionally participated in a conspiracy and was not merely an unwitting or uninvolved bystander."). Ms. Roach did object to the testimony that was remote in time, and her objection was sustained. It is not clear that an objection to the more recent transactions would have been sustained.

Second, movant cannot establish prejudice. As the Eighth Circuit has stated, the evidence against movant was "considerable." Henderson, 613 F.3d at 1183. Two co-conspirators and nine investigators testified against movant linking him to a drug conspiracy that began in 2007. Even if evidence of movant's prior drug dealings should have been excluded, the evidence was cumulative of other evidence establishing movant's knowledge, intent, and participation in the drug conspiracy for which he was convicted. The claim is without merit.

34

### 3.    Agent Parrish's comments regarding movant's attitude

Finally, in Ground Four movant faults his attorney for not objecting to what he has characterized as improper comments on his character by a DEA agent.  Movant argues these comments were in violation of Rule 404(b), and his counsel should have moved to have them stricken, requested that the Court instruct the jury to disregard the comments, or moved for a mistrial.

 During the cross-examination of Agent Parrish, the following exchange occurred relative to the use of a <u>Miranda</u> form:

Roach:    Okay. But you didn't use it?

Parrish:  Here's the deal.

Roach:    Sir, did you use it?

Parrish:  We did not.

. . .

Parrish:   No we did not. I don't recall, but he was probably presented with it. But  a guy as
              clever as Mr. Henderson over there with his attitude and his things, and know the
              way the system works, probably told us he didn't want to sign it. But being that we
              read the card, it was already covered.

Roach:    So you think he probably said he didn't want to waive his rights?

Parrish : No, sign the paper.

Roach:    Okay. But somehow as clever as you say he is, he's going to just give up
              those rights to you when you say you read them to him off a card?

Roach:    Yes, ma'am, it happens all the time.

Trial Transcript, Vol. III at 65.

Movant asserts that the statements that he was "clever," had an "attitude," and "knows the way the system works" were improper remarks on his character and should not have been admissible under Rule 404(b).  Movant faults his attorney for not objecting to these statements.

First, it may have been a strategic decision not to object to these remarks.  The remarks were vague, made in passing, and Ms. Roach may not have wanted to draw attention to them.  United States v. Sanchez-Garcia, 685 F.3d 745, 752 (8th Cir. 2012) (finding defense counsel "deliberately chose to withhold a contemporaneous objection so as to avoid drawing attention to the statement."). That said, even if movant's counsel should have objected and, therefore, her representation  "fell outside the wide range of professionally competent assistance," McReynolds, 208 F.3d at 723, which the Court does not find, movant cannot show prejudice.  To prevail on this claim, movant must show that "there is a reasonable probability that, but for counsel['s] failure to object . . . the result of the proceeding would have been different." Sinisterra v. United States, 600 F.3d 900, 909 (8th Cir. 2010) (citing Middleton v. Roper, 455 F.3d 838, 849 (8th Cir. 2006)).  Movant has not shown that the outcome of the trial would have been different had Ms. Roach objected to these comment.

Movant supposes that had his counsel objected, the Court would have stricken the testimony, instructed the jury to disregard the statements, or declared a mistrial. First and foremost, the Court would not have declared a mistrial.  "Exposure of a jury to improper testimony ordinarily is cured by measures less drastic than a mistrial, such as an instruction to the jury to disregard the testimony." United States v. Sherman, 440 F.3d 982, 987 (8th Cir. 2006). But even if movant's counsel had objected and the Court struck the testimony or instructed the jury to disregard the comments, movant cannot show prejudice. The Eighth Circuit "determine[s] the prejudicial effect of any improper testimony by examining the context of the testimony and the prejudice created by

36

it, as juxtaposed against the strength of the evidence of the defendant's guilt." Id. at 988 (citing United States v. Nelson, 984 F.2d 894, 897 (8th Cir.1993)).  As discussed a number of times above, the evidence against movant was considerable.  Agent Parrish's comments did not implicate movant in the crime, but vaguely implied that he had previous experience with law enforcement – something the jury already knew due to admission of the 1993 conviction.  The Eighth Circuit ultimately determined that it was improper to admit the 1993 conviction, but that it was harmless error.  Henderson, 613 F.3d at 1183.  There is nothing to indicate that the Eighth Circuit would take any other view of the stray comments made by agent Parrish, which were rather ambiguous.  Movant has not established constitutionally deficient performance or prejudice, and his claim is without merit.

### G.      Ground Seven

In his final ground for relief, movant argues notwithstanding the deficiencies of each ineffective assistance of counsel claim, that taken cumulatively his counsel's errors amount to constitutionally defective assistance of counsel.  The Eighth Circuit has repeatedly rejected the cumulative error theory of post-conviction relief, and the Court is bound by that precedent.  See, e.g., Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006) (citing Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002); United States v. Robinson, 301 F.3d 923, 925 n. 3 (8th Cir. 2002); Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996); Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990)). Movant's claim for relief in Ground Seven is denied.

### IV.  Conclusion

For all the reasons stated above, the Court finds that Stephen Henderson is not entitled to relief under 28 U.S.C. § 2255.  The Court finds that all the claims in movant's Motion to Vacate fail on the merits.

Accordingly,

**IT IS HEREBY ORDERED** that movant Stephen Henderson's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody is **DENIED.**

**IT IS FURTHER ORDERED** that movant Stephen Henderson has not made a substantial showing of the denial of a constitutional right such that reasonable jurists would find the Court's assessment of the constitutional claims debatable, or that reasonable jurists would find it debatable whether the Court was correct in its procedural rulings, and therefore this Court will not issue a certificate of appealability on those claims.  See Miller-El v. Cockrell, 537 U.S. 332, 338 (2003); Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

An appropriate judgment will accompany this Memorandum and Order.


**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this ___30th___ day of March, 2016.